RECEIVED
USDC CLERK, CHARLESTON, SC

2007 JUN -7  A 11: 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Teresa A. Quarles, ) | C. A. No. 2:06-2004-RBH-RSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Jo Anne Barnhart, Commissioner) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, Teresa A. Quarles, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits on April 11, 2003, alleging that she became disabled on October 27, 2002, due to depression, a weakened immune system, a rash on her face, and migraine headaches. The application was denied initially and on reconsideration by the Social Security Administration. The plaintiff filed a request for a hearing on May 26, 2004. The administrative law judge before whom the plaintiff appeared with attorney W. Daniel Mayes, and Charlie

Edwards, a vocational expert, considered the case de novo, and on January 31, 2006, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. (Tr. 15-26). The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on July 26, 2006.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the administrative law judge:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's depression and side effects of prescribed medications are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4.
>
> 5. The claimant's allegations regarding her limitations are not substantiated by the total evidence of record and not credible.
>
> 6. The claimant has the residual functional capacity to perform a range of work, restricted to preclude work other than simple, routine work in a low stress, supervised environment. The work can involve no required interaction with the public or team-type interaction with co-workers. She must avoid hazards such as unprotected heights and dangerous machinery and must work in an environment free from poor ventilation, dust,

2

fumes, gases, chemicals, odors, and extremes of humidity and temperature.

7. The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

8. The claimant is now an "individual closely approaching advanced age", but she was a "younger individual" as of her alleged onset date (20 CFR § 404.1563).

9. The claimant has a "high school education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work by reason of her mental impairments (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rules 202.21(prior to age 50) and 202.14 (beginning at age 50) as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as inspector (500 such jobs in South Carolina and 50,000 in the United States); bench worker/assembler (1,000 such jobs in the state and 50,000 in the nation); and packer (1,000 such jobs in South Carolina and 45,000 in the national economy).

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

Tr. 24-25.

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42

3

U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as evidence which a

reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

In short the only issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence and proper legal standards have been applied.

## QUESTIONS PRESENTED

At oral argument before the undersigned and by brief the plaintiff argued that the Commissioner's decision to deny benefits should be reversed because the administrative law judge did not perform the analysis of the treating and consulting physician opinions required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

Additionally, the plaintiff asserted that the administrative law judge did not assess the plaintiff's mental impairments in the manner required by the regulations set forth in 20 C.F.R. § 404.1520a. See also, 20 C.F.R. § 416.920a.

## DUTY TO ANALYZE MEDICAL OPINIONS

It is beyond cavil that the administrative law judge must evaluate all evidence in the case record that may have a bearing on the determination of whether a claimant is disabled and entitled to benefits. In 20 CFR § 404.1527(d) the Commissioner indicates that "Regardless of its source, we will evaluate every medical opinion we receive."

A review of the record reveals that this matter should be

5

reversed and remanded so that the administrative law judge can properly evaluate the medical evidence.

Here, on February 26, 2003, Dr. W. Gaines Entrekin, the medical director for Savannah River Site (SRS) where the plaintiff was employed, endorsed a finding that the plaintiff was disabled for the purposes of her application for incapability retirement. Tr. 227. Dr. Entrekin noted that the plaintiff had suffered from a "2-3 year history of severe depression. She is experiencing fatigue, anxiety, anhedonia, psychomotor retardation, inability to concentrate, and profound sleep disturbance." Id. In Dr. Entrekin's medical opinion, because of the plaintiff's "continuing fatigue, terminal insomnia, psychomotor retardation, and depressed effect," she was incapable of performing her current essential job functions or any other job where she would be required to concentrate, be consistent, work shifts, or be relied upon to provide persistent service. Id. Her prognosis for meaningful functional recovery was poor, demonstrated by her lack of significant response to multiple psychiatric medications and combined psychotherapy. Dr. Entrekin noted that "Despite optimum therapy for the past 6 months, the symptoms that have been present for the past 2 years continue." Id. Dr. Entrekin noted that he had reviewed the opinions of Dr. Lentz and Dr. Tomarchio in making a decision regarding the Plaintiff's disability.

Dr. Entrekin only performed an evaluation of the Plaintiff's ability to perform her work for the purposes of her incapability retirement application. Still, it appears that Dr. Entrekin had

6

access to all of the plaintiff's pertinent medical records and could consult her treating physicians, Dr. Lentz and Dr. Tomarchio, regarding the plaintiff's condition. As an evaluating physician with access to the relevant medical opinions and record evidence, Dr. Entrekin's opinion required evaluation under the federal regulations. Nonetheless, the administrative law judge's decision does not mention Dr. Entrekin's findings or opinion. The administrative law judge failed to consider Dr. Entrekin's assessment that the plaintiff was "incapable of performing her current essential job functions or any other job where she would be required to concentrate, be consistent, work shifts, or be relied upon to provide persistent service." Tr. 227. Nor did the administrative law judge consider Dr. Entrekin's opinion that "the employee is not capable of pursuing any significant gainful employment." Tr. 228.

The case should be remanded for consideration of Dr. Entrekin's assessment and, if the administrative law judge discounts the opinion, the administrative law judge must "provide specific, legitimate reasons...." for his decision. Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003).

### EVALUATION OF MENTAL IMPAIRMENTS

The plaintiff claims that the administrative law judge did not follow the mandatory procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a which reads in relevant part:

> (a) General. The steps outlined in §404.1520 apply to the evaluation of physical and mental impairments. In addition, when we evaluate the severity of mental impairments for adults (persons

7

age 18 and over) and in persons under age 18 when Part A of the Listing of Impairments is used, we must follow a special technique at each level in the administrative review process. We describe this special technique in paragraphs (b) through (e) of this section. Using the technique helps us:
(1) Identify the need for additional evidence to determine impairment severity;
(2) Consider and evaluate functional consequences of the mental disorder(s) relevant to your ability to work; and
(3) Organize and present our findings in a clear, concise, and consistent manner.
(b) Use of the technique. (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)..... If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.(2) We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.
(c) Rating the degree of functional limitation.(1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.
(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of

your functional limitation.
(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.
(4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.
(d) Use of the technique to evaluate mental impairments. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).
(1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see §404.1521).
. . .
(3) If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.
(e) Documenting application of the technique. ... At the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), we will document application of the technique in the decision....
(2) At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a

>specific finding as to the degree of limitation in
>each of the functional areas described in
>paragraph (c) of this section.
>(3) If the administrative law judge requires the
>services of a medical expert to assist in applying
>the technique but such services are unavailable,
>the administrative law judge may return the case
>to the State agency or the appropriate Federal
>component, using the rules in § 404.941, for
>completion of the standard document. ...
>65 FR 50774, Aug. 21, 2000; 65 FR 60584, Oct. 12,
>2000.

The administrative law judge did make a function by function assessment as set forth in the regulations. Tr. 20. However he made no attempt to explain the assessment, or provide a rationale as to why the Plaintiff's impairments were found to be only moderate in each of the categories. Id. The administrative law judge summarized some of the psychological evaluations and treatment records that were part of the evidence but ignored other evaluations, including that of Dr. Entrekin. Further, there is no weighing of the different opinions or analysis of the plaintiff's mental impairments in the manner contemplated in 20 C.F.R. §§ 404.1520a as described above. The matter should be reversed and remanded so that the administrative law judge can perform a proper evaluation of Plaintiff's mental impairments.

### CONCLUSION

Therefore, for the aforementioned reasons, it is recommended that pursuant to the power of this court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), the Commissioner's decision be reversed

under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), and that the case be remanded to the Commissioner to properly evaluate Dr. Entrenkin's assessments and Plaintiff's mental impairments. See, Melkonyan v. Sullivan, 111 S.Ct. 2157 (1991). The Clerk of Court should be directed to enter a separate judgment pursuant to Fed. R. Civ. P. 58.

                                      Respectfully submitted,

                                      */s/ Robert S. Carr*
                                      Robert S. Carr
                                      United States Magistrate Judge

Charleston, South Carolina,

June 7, 2007